IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MELVIN JORDAN, | ) | |
| | ) | |
| Plaintiff, | ) | 11 C 5542 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| HECTOR QUINTERO, DAVID GREY, and DEVI AUSTIN, | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Melvin Jordan, a prisoner at Stateville Correctional Center ("Stateville"), brings suit under 42 U.S.C. § 1983 against Defendants David Grey, Devi Austin, and Hector Quintero. Plaintiff alleges that Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment. Defendants have filed a motion pursuant to Federal Rule of Civil Procedure 56 seeking summary judgment in their favor. For the reasons set forth below, Defendants' motion for summary judgment is granted in part and denied in part.

### Compliance with Local Rule 56.1

Consistent with Northern District of Illinois Local Rule 56.1(a)(3), Defendants filed a statement of facts alongside their motion for summary judgment and accompanying brief. *See* Defs.' LR 56.1(a)(3) Stmt., ECF No. 156. Defendants' statement complies with the rule's requirement that "each paragraph [contain] specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." LR 56.1(a). Plaintiff was required to submit a responsive filing pursuant to Local Rule 56.1(b)(3)(B), consisting in part of a "response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits,

parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(B). Plaintiff failed to submit such a responsive filing, instead submitting only his own, separate statement of additional facts. *See* Pl.'s LR 56.1(b)(3)(C) Stmt., ECF No. 165.[1]

"[W]hen a party fails to comply with the local rule requiring a response to a statement of undisputed material facts, the court may rely on the opposing party's statement to the extent that it is supported by citations to relevant evidence in the record." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012) (citing *FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 634 (7th Cir. 2005)). Because Plaintiff did not properly respond to any portion of Defendants' 56.1(a)(3) statement of facts, those facts are deemed admitted where they are supported by the underlying evidence submitted by Defendants. But Plaintiff's failure to properly respond to Defendants' statement of facts "does not, of course, automatically result in judgment for [Defendants]." *Id.* at 884 (internal quotation marks omitted). Rather, Defendants must still demonstrate that they are entitled to judgment as a matter of law, and the Court must still draw all reasonable inferences in Plaintiff's favor. *Id.*

## **Factual Background**[2]

During the time relevant to his lawsuit, Plaintiff was incarcerated at Stateville, where Defendants Grey, Austin, and Quintero were employed as correctional staff. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 1–2. Defendants routinely worked in housing unit B, where Plaintiff's cell was located, in their capacity as correctional officers. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 2.

---

[1] Plaintiff has titled his statement of additional facts as a Local Rule 56.1(a)(3) statement, though it is more properly characterized as a Local Rule 56.1(b)(3)(C) statement. *See* LR 56.1(b)(3)(C) (instructing a party opposing a motion for summary judgment to file "a statement . . . of any additional facts that require the denial of summary judgment"). The Court will accordingly cite Plaintiff's statement of additional facts as a Local Rule 56.1(b)(3)(C) statement.

[2] Except where otherwise noted, the following facts are undisputed or have been deemed admitted.

Stateville maintains several policies relevant to the present litigation. A prisoner at Stateville can access the healthcare unit (HCU) for a medical appointment if he has a healthcare pass. Defs.' LR 56.1(a)(3) Stmt. ¶ 30. There are two ways for a prisoner to obtain a healthcare pass: he can request one directly from healthcare personnel during daily rounds, or he can submit a written request for review by HCU staff. *Id*.

On March 11, 2009, Plaintiff was taken to the HCU after sustaining an injury to his left knee while playing basketball. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 7–9. The examiner concluded that Plaintiff had sprained his knee, though the knee exhibited no bruising, swelling, or bone deformity at the time of the examination. *Id*. ¶¶ 10–11. Plaintiff was prescribed pain medication and an analgesic balm, and he was told to return to the HCU if he experienced increased pain. *Id*. ¶ 12; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 3.

Plaintiff attests that six days later, on March 17, he awoke with elevated pain and swelling in his left knee. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 4.[3] Plaintiff sought a healthcare pass for this pain, though he did not receive a pass that day. *Id*. ¶¶ 4–5. Plaintiff consumed the last of his pain medication on March 18. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 5–7. By March 19, Plaintiff's pain had become severe, and his knee's swelling made it difficult for him to climb into and out of his upper-level bunk. *Id*. ¶ 6. He received a healthcare pass on the following day, March 20, with an appointment scheduled for March 21. *Id*. ¶¶ 5–7. The healthcare pass did not specify a time for his appointment. *Id*. ¶ 7. By March 21, the day of the scheduled HCU visit, Plaintiff was visibly limping. *Id*. ¶ 8.

---

[3] Defendants deny that Plaintiff's knee was swollen as of March 17, but they have not cited evidence in support of this denial. *See* Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 4, ECF No. 166. Rather, Defendants point only to documentation from Plaintiff's prior HCU visit on March 11, at which time no swelling was recorded. *Id.* The fact that Plaintiff's knee was not swollen on March 11 does not mean that his knee was not swollen on March 17.

3

At some time on March 21, Plaintiff informed Grey and Austin that he had a healthcare pass for that day because of his knee condition. *Id*. Shortly after these conversations, Quintero came to Plaintiff's cell without warning and said, "Healthcare." *Id*. ¶ 9. Plaintiff prepared to leave his cell by tucking in his shirt and turning off all of his electronics, as Stateville's rules require. *Id*. ¶ 10. Plaintiff asserts, and Defendants deny, that Plaintiff's appearance at this time made it readily apparent to Quintero that Plaintiff was in severe pain and unable to move easily on his knee. *Id.* ¶ 11; Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 11.

Two minutes after first arriving, Quintero muttered something inaudible and walked away, leaving Plaintiff in his cell without an escort to the HCU. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 10. A few minutes later, Plaintiff called out to Quintero as he passed Plaintiff's cell, telling him that he was in severe pain and insisting that he be taken to the HCU for his appointment. *Id*. ¶¶ 12–13. Quintero continued to walk away, saying only that Plaintiff had already refused the appointment. *Id*. It is undisputed, however, that Plaintiff had not refused the appointment. Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 12. Plaintiff claims that he then attempted to contact Grey and Austin to request help in getting to the HCU. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 14. In support, he claims that other inmates told him that Grey and Austin were in earshot when he called out his requests to them. *See id.* ¶¶ 14–15 (citing Pl.'s LR 56.1(b)(3)(C) Stmt., Ex. H ("Pl.'s Aff.") ¶¶ 14–15). But neither Grey nor Austin appeared at his cell or acknowledged his requests. *Id.* ¶ 14.

Later that day, Plaintiff filed an emergency grievance requesting that Quintero be disciplined for leaving Plaintiff in his cell, despite Plaintiff's healthcare pass and his reports of pain. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 16. Plaintiff's counselor, Karen Rabideau, responded to the grievance in writing, saying that Quintero had acted improperly and that Plaintiff had not refused

4

his appointment.  *Id.*  Nevertheless, Quintero was never formally disciplined or reprimanded for the incident.  *Id*.

Plaintiff was eventually seen by the HCU on March 26, 2009, five days after his missed appointment.  Defs.' LR 56.1(a)(3) Stmt. ¶ 14.  At that time, the HCU confirmed the diagnosis of a sprain in his left knee.[4]  *Id.*

### Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Shell v. Smith*, 789 F.3d 715, 717 (7th Cir. 2015).  To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor."  *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).  The evidence considered for summary judgment "must be admissible if offered at trial, except that affidavits, depositions, and other written forms of testimony can substitute for live testimony."  *Malin v. Hospira, Inc.*, 762 F.3d 552, 554–55 (7th Cir. 2014).  The Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it."  *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013).  The Court must not make credibility determinations or weigh conflicting evidence.  *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

---

[4]  Defendants assert that Plaintiff's March 26 appointment "did not reveal the presence of any swelling, bruising[,] or deformity."  Defs.' LR 56.1(a)(3) Stmt. ¶ 14 (citing Defs.' LR 56.1(a)(3) Stmt., Ex. G).  The medical records in which Defendants source this assertion, however, are silent as to whether Plaintiff's knee was swollen or bruised on March 26, and they are therefore unsupportive.

5

**Analysis**

Plaintiff's complaint alleges that Grey, Austin, and Quintero were deliberately indifferent to his medical needs when they failed to take him to the HCU on March 21, 2009, in spite of his healthcare pass and his repeated entreaties. In seeking summary judgment on the claims against them, Defendants make two primary arguments. First, they argue that no reasonable jury could find that Plaintiff has established the requisite elements of his deliberate indifference claims. Second, they contend that, even if the Court were to find that Plaintiff has provided sufficient evidence for his claims to proceed to trial, they are entitled to qualified immunity. The Court will address each of these arguments in turn.

**I.      Deliberate Indifference to Medical Needs**

Deliberate indifference to a prisoner's medical needs can violate the Eighth Amendment's prohibition on cruel and unusual punishment, which is "applicable to state officials and employees by interpretation of the Fourteenth Amendment's due process clause." *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015) (citing *Estelle v. Gamble*, 429 U.S. 97, 101, 104 (1976)). To prove a claim under § 1983 for deliberate indifference, a plaintiff must establish both objective and subjective components. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). First, he must show that his medical need was objectively serious. *Id.* Second, "the plaintiff must show that the defendant[s] [ ] had a sufficiently culpable state of mind—that their acts or omissions [were] sufficiently harmful to evidence deliberate indifference to his serious medical needs." *Pittman ex rel. Hamilton v. Cty. of Madison*, 746 F.3d 766, 775–76 (7th Cir. 2014) (citing *Estelle*, 429 U.S. at 106) (internal quotation marks omitted). In addition, when an inmate brings a deliberate indifference claim based upon delay of medical treatment, the inmate not only must prove the objective and subjective components of his claim, but also must offer

6

"verifying medical evidence" that the delay caused harm. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008); *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007).

### A. Objective Medical Need

First, Defendants argue that Plaintiff has not offered evidence from which a reasonable jury could find that he suffered from an objectively serious medical need. "An objectively serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (quoting *Zentmyer v. Kendall Cty.*, 220 F.3d 805, 810 (7th Cir. 2000)). A medical condition need not be life-threatening to be objectively serious. *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997).

"[M]inor aches and pains" do not rise to the level of a serious medical condition. *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996). Thus, if relatively minor, a sprained joint does not necessarily satisfy the objective prong of a deliberate indifference claim. *See Alvarez v. Wexford Health Sources, Inc.*, No. 13 C 703, 2016 WL 7046617, at *4 (N.D. Ill. Dec. 5, 2016) (gathering cases). But when such injuries cause severe and persistent pain, they may rise to the level of being objectively serious. *See id.* (holding that prolonged pain from basketball-related ankle injury was sufficient to qualify as an objectively serious medical condition); *Smith v. Perez*, No. 13 C 3490, 2015 WL 5821442, at *2 (N.D. Ill. Oct. 2, 2015) (holding that reasonable jury could find a serious medical condition where plaintiff claimed he had "excruciating pain in his feet"); *Dobbey v. Carter*, No. 12 CV 9223, 2015 WL 5693109, at *4 (N.D. Ill. Sept. 28, 2015) (finding that evidence of ongoing knee pain was sufficient to meet the objective prong in a deliberate indifference claim).

Plaintiff was diagnosed with a knee sprain during his initial visit to the HCU, and this diagnosis was confirmed when he returned on March 26. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 11–12, 14. Plaintiff describes his knee pain as being so severe that he had substantial difficulty moving his leg, a difficulty compounded by swelling around the joint. Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 4, 6, 8.[5] Furthermore, Plaintiff contends that his condition was deteriorating over time. He alleges that his pain, already substantial in the first days after the incident, progressively worsened after March 17, just as his pain medication was beginning to run out. *Id*. ¶¶ 4–5. Plaintiff describes walking with a visible limp in the days after the incident, and he alleges that his knee condition interfered with his ability to climb in and out of his bunk. *Id.* ¶ 6.

Based on this evidence, a reasonable jury could conclude that Plaintiff's knee injury was sufficient to meet the objective prong of the deliberate indifference test. While not life-threatening, Plaintiff's knee caused him severe pain over the course of several days. This alone is sufficient to raise a genuine dispute as to whether Plaintiff's knee injury was an objectively serious condition, rather than a mere "minor ache." *Alvarez*, No. 13 C 703, 2016 WL 7046617, at *4.[6] And because "[e]ven a few days' delay in addressing a severely painful but readily

---

[5]  For their part, Defendants contend that no swelling occurred, citing Plaintiff's medical records from his appointments on March 11 and March 26 in support. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 10, 14; Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶¶ 4, 11. The Court notes, however, that Defendants' position is not supported by the underlying evidence from Plaintiff's March 26 medical appointment, as the appointment records are entirely silent as to the presence of swelling or bruising on Plaintiff's knee. *See* Defs.' LR 56.1(a)(3) Stmt. ¶ 14; *id.*, Ex. G. Furthermore, even if there were evidence that Plaintiff's knee was outwardly normal by his second HCU visit, that would not necessarily contradict Plaintiff's assertion that his knee evinced some swelling in the fifteen-day interim between appointments.

[6]  Defendants cite *Bacon v. Harder*, 248 F. App'x 759 (7th Cir. 2007), in support of their argument that a joint sprain such as Plaintiff's cannot satisfy the objective prong of a deliberate indifference claim. In *Bacon*, the Seventh Circuit held that an inmate could not prove deliberate indifference because he presented no evidence on the subjective prong of his claim. *Id.* at 761. The Court also noted in passing that "[a]mple evidence in the record support[ed] the district court's conclusion that [the plaintiff's] ankle sprain did not constitute a serious medical need." *Id.* But it did not hold as an independent basis for its decision that no reasonable jury could have concluded otherwise. *See id.* As such, the language that Defendants rely upon in *Bacon* is *obiter dicta* and is not dispositive of the case before this Court.

8

treatable condition suffices to state a claim of deliberate indifference," Plaintiff is entitled to present this question of fact to a jury. *Smith*, 666 F.3d at 1040.

### B. Subjective Deliberate Indifference

Defendants next argue that Plaintiff has failed to provide admissible evidence sufficient to establish their subjective deliberate indifference. In response, Plaintiff maintains that Grey, Austin, and Quintero each exhibited deliberate indifference to his medical needs when they failed to escort him to the HCU on March 21, 2009.

Deliberate indifference is proved by demonstrating that a prison official knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). A showing of a defendant's mere negligence or inadvertence is insufficient. *Roe*, 631 F.3d at 857. But "[a] guard who is aware of complaints of pain and does nothing to help a suffering prisoner obtain treatment . . . exhibit[s] deliberate indifference." *Dobbey*, 806 F.3d at 940.

#### 1. Defendants Grey and Austin

Plaintiff's deliberate indifference claims against Grey and Austin arise from two instances in which he claims he communicated with them on March 21. He first attests that he told Grey and Austin on March 21 about his knee pain and his upcoming healthcare appointment before Quintero came to fetch him from his cell. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 8. Plaintiff then says he "attempted to contact" Grey and Austin after Quintero failed to escort him to the HCU, though neither Defendant acknowledged his complaints. *Id.* ¶ 14. Grey and Austin do not recall these events, but they do not dispute that they occurred. Defs.' LR 56.1(a)(3) Stmt. ¶¶ 17, 20; Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 18.

9

Although a reasonable jury could conclude that Plaintiff's conversations with Grey and Austin put them on notice of Plaintiff's pain, awareness alone is insufficient to create liability. By Plaintiff's own account, he told Grey and Austin that he was already scheduled to receive medical attention later that day. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 8. Plaintiff has not asserted that either Defendant was individually responsible for ensuring that he be taken to the HCU, nor has he argued that Grey's or Austin's failure to immediately escort him to his appointment constituted deliberate indifference. Indeed, a reasonable fact finder could draw the inference that Grey and Austin sent Quintero to Plaintiff's cell, given the proximity between Plaintiff's conversations with the former and the arrival of the latter (approximately twenty minutes, by Plaintiff's recollection). Pl.'s LR 56.1(b)(3)(C) ¶ 9. Without a showing that either Grey or Quintero ignored Plaintiff's need for medical attention, Plaintiff cannot prove that either Defendant failed "to help a suffering prisoner obtain treatment" following Plaintiff's conversations with them. *See Dobbey*, 806 F.3d at 940.

The remaining evidence in the record about Grey and Austin is likewise insufficient to sustain a deliberate indifference claim against them. When Quintero left Plaintiff in his cell, Plaintiff began calling to Grey and Austin for help in getting to the HCU. *See* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 14; Pl.'s Aff. ¶ 14. Plaintiff contends that his cries were heard by multiple inmates in the housing unit, including several in cells near Grey and Austin. *See* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 14; Pl.'s Aff. ¶ 15. If those inmates could hear his entreaties, the thinking goes, Grey and Austin must have heard them as well, and their subsequent failure to help Plaintiff or inquire into his predicament would constitute deliberate indifference to his medical needs. *See* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 15.

Plaintiff's only support for this argument, however, is his own account of other inmates' out of court statements. This is a textbook example of inadmissible hearsay, *see* Fed. R. Civ. P. 801(c), and such evidence cannot support Plaintiff's allegations at this stage in the litigation. *See Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) ("[A]ffidavits supporting a motion in opposition to summary judgment must set forth facts that would be admissible in evidence."); *Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1265 (7th Cir. 1993) (noting that, on summary judgment, courts "do not consider hearsay statements that are otherwise inadmissible at trial, and this limitation applies to deposition testimony based on inadmissible hearsay"). Plaintiff might be able to testify that he shouted loudly in his attempt to communicate with Grey and Austin. But without admissible evidence to also prove that Grey and Austin actually heard him or were even within earshot, he cannot prove that Grey and Austin were aware of his need for assistance. *See Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) ("[A] plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm."). The Court therefore finds that Plaintiff has failed to create a triable issue of fact as to Grey's or Austin's subjective deliberate indifference, and summary judgment is granted in their favor.

### 2. Defendant Quintero

Defendants also argue that Plaintiff cannot prove the subjective element of his claim with respect to Quintero. To establish Quintero's liability, Plaintiff must offer evidence from which a reasonable jury could conclude that Quintero was subjectively aware of the risk that Plaintiff's knee injury presented, and that his decision to leave Plaintiff was made in disregard of that risk. *Arnett*, 658 F.3d at 750.

Plaintiff has created a triable issue of fact regarding the subjective element of his claim against Quintero. First, Plaintiff contends that he was visibly limping throughout March 21.

11

Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 8. Thus, a reasonable jury could conclude that the time Quintero spent waiting at Plaintiff's cell provided opportunity for him to observe this outward sign of Plaintiff's injury. *See* Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 10. Even if Plaintiff's knee were not swollen or bruised, as Defendants contend, a visible limp could be sufficient to illustrate that he faced a substantial risk of harm if he were denied medical attention. *See Gleash v. Hardiman*, No. 88 C 5949, 1993 WL 92436, at *7 (N.D. Ill. Mar. 26, 1993) (noting that inmate's visible limp could contribute to jury's finding that defendants who saw the limp acted with deliberate indifference by ignoring inmate's requests for medical treatment).

More importantly, Plaintiff also asserts that he directly told Quintero about his condition in an exchange on March 21. Soon after Quintero left for the first time, he walked by Plaintiff's cell on his way toward another section of the prison tier. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 12. As he passed, Quintero remarked that Plaintiff had refused his healthcare appointment, though Defendants now admit that Plaintiff never refused the appointment.[7] *Id*.; Defs.' Resp. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 12. Plaintiff responded by saying "that he was in pain and needed [to] visit [ ] the HCU." Pl.'s LR 56.1(b)(3)(B) ¶ 13. Quintero again walked away without taking Plaintiff to his healthcare appointment. *Id*. ¶ 12. A jury presented with this evidence could reasonably conclude that Quintero was subjectively aware of Plaintiff's injuries and yet chose to leave him in his cell. *See Dobbey*, 806 F.3d at 941 (reversing grant of summary judgment to defendant prison guard where defendant did not seek medical help for plaintiff after learning that plaintiff's objectively serious medical condition was going untreated). As such, Plaintiff has raised a

---

[7] This was later confirmed by a prison counselor, Karen Rabideau, who found in an internal review that Plaintiff had not refused his appointment and that Quintero had acted incorrectly by leaving him in his cell. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 16.

genuine dispute of material fact with regard to the subjective component of his deliberate indifference claim against Quintero.

### C. Verifying Medical Evidence

Next, Defendants argue that, even if Plaintiff suffered from an objectively serious medical need, they are nevertheless entitled to summary judgment because Plaintiff has failed to offer verifying medical evidence that the delay exacerbated his injury.[8] When an inmate brings a deliberate indifference claim based upon delay of medical treatment, the inmate must offer "verifying medical evidence" that the delay caused harm. *Grieveson*, 538 F.3d at 779; *Williams*, 491 F.3d at 715. A delay causes harm when it "exacerbate[s] the injury or unnecessarily prolong[s] an inmate's pain." *McGowan*, 612 F.3d at 640. "A non-trivial delay in treating serious pain can be actionable even without expert medical testimony showing that the delay aggravated the underlying condition." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) (citing *Grieveson*, 538 F.3d at 779). "Verifying medical evidence" is evidence such as medical records or physician's notes that "tend[ ] to confirm or corroborate a claim that the delay was detrimental." *Williams*, 491 F.3d at 715; *see, e.g.*, *Petties*, 836 F.3d at 732 (finding sufficient verifying medical evidence that a delay in treatment caused harm where plaintiff offered his doctor's treatment notes indicating that plaintiff was suffering from pain); *Grieveson*, 538 F.3d at 779 (finding that a doctor's treatment notes qualified as verifying medical evidence where they confirmed that an inmate was suffering from a painful condition, because such documentation

---

[8] Plaintiff draws a distinction between the "denial" of medical attention and a "delay" in medical attention, arguing that verifying evidence is only necessary for claims involving the latter. Pl.'s Resp. Defs.' Mot. Summ. J. at 1–2, ECF No. 164. The Court does not need to address the merits of this argument because, as explained below, Plaintiff has proffered sufficient verifying medical evidence to survive Defendants' motion for summary judgment, even characterizing his medical treatment as having been "delayed" rather than "denied."

would "help a jury determine whether the delay unnecessarily prolonged and exacerbated [the plaintiff's] pain").

Here, Plaintiff has offered sufficient verifying medical evidence to show that the delay in his receipt of medical care prolonged his pain. First, his medical records show that he was diagnosed with a knee sprain on March 11, for which he was prescribed pain medication and an analgesic balm. Defs.' LR 56.1(a)(3) Stmt. ¶ 11–12; *id.*, Ex. F. Plaintiff contends, and Defendants do not dispute, that this initial prescription ran out on March 18. Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 5. At Plaintiff's March 26 HCU appointment, his examiner confirmed that he was still suffering from a knee sprain. Defs.' LR 56.1(a)(3) Stmt. ¶ 14; *id.*, Ex. G. This evidence is sufficient for a reasonable jury to determine that Plaintiff was in pain on March 21 and that Quintero's failure to take him to his HCU appointment unnecessarily prolonged that pain.

## II. Qualified Immunity

Last, Defendants contend that they are entitled to qualified immunity with regard to Plaintiff's deliberate indifference claims. "[Q]ualified immunity shields an official from liability for civil damages, provided that the illegality of the official's conduct was not clearly established at the time he acted." *Roe*, 631 F.3d at 858; *accord Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In determining whether a right was "clearly established" at the time of Defendants' conduct, the Court must look at the right in a particularized sense, rather than at a high level of generality. *Roe*, 631 F.3d at 858. "As the Supreme Court [ ] has emphasized, however, there is no need that the very action in question have previously been held unlawful." *Id*. (quoting *Safford Unified Sch. Dist. v. Redding*, 557 U.S. 364, 377 (2009)) (internal quotation marks and brackets omitted).

14

Prisoners have had a clearly established constitutional right to timely treatment of their objectively serious medical conditions since *Estelle v. Gamble*, 429 U.S. 97 (1976), was decided. *See Gutierrez*, 111 F.3d at 1371 ("This Court's post-*Estelle* decisions, as well as those of the other circuit courts, have repeatedly recognized that delays in treating painful medical conditions that are not life-threatening can support Eighth Amendment claims."); *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) ("As *Estelle* recognized, a prison official may evidence deliberate indifference by failing to treat or delaying the treatment of a serious medical need.").

Defendants nevertheless contend that there was no clearly established right to timely medical treatment for sprain injuries like Plaintiff's. In support of this position, Defendants rely on *Bacon v. Harder*, citing dicta in which the court noted that "[a]mple evidence in the record support[ed] the district court's conclusion that [the plaintiff's] ankle sprain did not constitute a serious medical need." 248 F. App'x at 761. But it is immaterial whether the Defendants were on notice about this specific ankle injury's treatment in prior deliberate indifference cases. *See Roe*, 631 F.3d at 858–61 (rejecting argument that defendant was entitled to qualified immunity in deliberate indifference case where it was not clearly established that defendant had violated plaintiffs' constitutional rights "with respect to the *particular* condition and *particular* treatment at issue"). Rather, it was clearly established in 2009 that inmates could not be deliberately denied timely medical attention for painful conditions, especially where their injuries were "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Zentmyer*, 220 F.3d at 810. Plaintiff has provided sufficient evidence for a trier of fact to conclude that he had just such a condition, and Defendants therefore are not entitled to summary judgment on grounds of qualified immunity in this matter.

## **Conclusion**

For the reasons stated herein, Defendants' motion for summary judgment [154] is granted with respect to Defendants Grey and Austin and denied with respect to Defendant Quintero. A status hearing will be held at 9:00 a.m. on August 23, 2017, at which point the parties should be prepared to set deadlines for pretrial filings, a date for the pretrial conference, and a date for trial.

**IT IS SO ORDERED.**                             ENTERED   7/24/17

_____

**John Z. Lee**
**United States District Judge**

16